**UNITED STATES of America**

v.

**Stanley DIAMOND, Benjamin Garonzik, Robert Griffin, Benjamin Clott, a/k/a Buddy, and Morton Baumgarten.**

**Crim. No. JH–79–0492.**

United States District Court,
D. Maryland.

May 1, 1980.

U. S. Atty., Russell T. Baker, Jr., Asst. U. S. Attys., Catherine C. Blake, David D. Queen and Price O. Gielen, Baltimore, Md., for plaintiff.

L. Paige Marvel, and Marvin Garbis, Garbis & Schwait, P.A., Baltimore, Md., for Diamond.

Benjamin Lipsitz, Baltimore, Md., for Garonzik.

Joseph F. Murphy, Jr., Towson, Md., for Griffin.

Michael S. Libowitz, Baltimore, Md., for Clott.

Nathan Stern, Baltimore, Md., for Baumgarten.

## MEMORANDUM AND ORDER

HOWARD, District Judge.

Defendants Stanley Diamond, Robert Griffin and Benjamin Garonzik have been charged with conspiracy to conduct or participate in the conduct of an enterprise's activities through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) and with racketeering in violation of 18 U.S.C. § 1962(c). Each defendant has moved to suppress evidence seized through electronic listening and recording devices by law enforcement officers, and each has also moved for severance of the trial. The Court held a hearing on these motions on April 21, 1980. Based on the evidence adduced and memoranda submitted by all parties, the Court denies defendants' motions to suppress and motions to sever.

### I.

Briefly, the pertinent facts are the following. From on or about August 23, 1978 to December 4, 1979, conversations between various defendants [1] and Baltimore City Police Officers were recorded in connection with a joint federal-local undercover investigation into attempted bribery of the police. Bribery is the predicate offense of federal racketeering influence and corrupt organization charges in this case. These conversations were recorded with the officers' knowledge and consent.

Defendant Griffin was arrested on September 30, 1978 for state gambling violations. The recorded conversations began on October 5, 1978, and related to bribes offered by Griffin in exchange for copies of evidence seized from him and for future protection. Defendant Diamond was arrested on April 18, 1979, also for state gambling violations. The recorded conversations began on April 20, 1979 as a result of an approach made by Diamond at the time of his arrest. These conversations related to bribes offered by Diamond in exchange for help in his state case.

---

1. Including defendants Benjamin Clott and Morton Baumgarten.

Defendant Garonzik was arrested on December 18, 1979, for the charges in this case and no taped conversations of him took place after his arrest.

## II.

Defendants Griffin and Diamond move to suppress evidence obtained through electronic surveillance on the grounds that: (1) the law enforcement officers violated their Fourth Amendment rights by conducting unreasonable searches; (2) these same officers violated defendants' Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel at a critical stage of the proceedings; and (3) the conduct of the law enforcement officers was so outrageous and offensive to the American criminal justice system that the Court should exercise its supervisory powers to suppress the evidence. Defendant Garonzik moves to suppress on the first and third grounds only since none of his conversations were taped after his arrest.

The Court will address the three issues seriatim.

### A.

It is provided in 18 U.S.C. § 2511(2)(c) that:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

The defendants do not argue that consensual monitoring or recording *per se* is unconstitutional. Rather, their primary complaint is against the length of the electronic surveillance—15 months. They claim that the conduct was of such intolerable scope and intensity as to be violative of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). This Court does not agree.

In *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Supreme Court upheld the admission of evidence obtained by means of a wireless electronic eavesdropping device worn consensually by an informer while meeting with the defendant and overheard by Government agents. The court held that:

"If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." *Id.* at 751, 91 S.Ct. at 1126.

■ In the present case, the Court does not find the defendants' privacy has been invaded because the taped conversations were between the defendants and law enforcement officers. "The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose." *Lopez v. United States*, 373 U.S. 427, 439, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963). In short, defendants took the risk that their alleged bribery offers would be accurately reproduced in court, whether by faultless memory or mechanical recording. *Id.* at 439, 83 S.Ct. at 1388.

■ The Court further finds that the fifteen-month period was reasonable.

The Government proffers that the fifteen-month period of monitoring was required to gather sufficient evidence to seek indictments against all defendants in both this case and the case of *U. S. v. Allen, et al.*, No. H–79–0493 (D.Md.1980), and that premature indictment of one or two defendants would have breached the secrecy of the undercover operation as to other potential defendants. The Government's position is fully supported by *United States v. Lovasco*, 431 U.S. 783, 793, 97 S.Ct. 2044, 2050, 52 L.Ed.2d 752 (1977) wherein the court stated:

"It might be argued that once the Government has assembled sufficient evidence to prove guilt beyond a reasonable doubt, it should be constitutionally required to file charges promptly, even if its investigation of the entire criminal transaction is not complete. Adopting such a rule, however, would have many of the same consequences as adopting a rule requiring immediate prosecution upon probable cause.

"First, compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice . . ."

In sum, the Court finds that the fifteen months of consensual monitoring by the Government did not violate defendants' Fourth Amendment rights.

### B.

■ Defendants Griffin and Diamond contend that the electronic surveillance conducted after sufficient evidence had been gathered for indictment and after they were arrested on state gambling charges violated their Fifth and Sixth Amendment rights.

The Court, in discussing defendants' Fourth Amendment claim, has disposed of their first assertion regarding the continued investigation after sufficient evidence was present for indictment. *See U. S. v. Lovasco, supra.* The Court has found that the Government did not abuse its discretion in the fifteen-month monitoring.

■ The defendants next claim that statements made after their arrests cannot be used against them unless they were made in the presence of counsel. The Court, however, finds no Sixth Amendment violation. Unlike *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246

(1964), the instant case does not involve the use of incriminating statements made by indicted defendants out of the presence of counsel to prove the charges in the pending indictment. Rather, the evidence of conversations taped after their arrests is to be used in proof of the federal racketeering influence and corrupt organization charges which are separate and distinct from the state gambling charges. In other words, the *Massiah* doctrine does not forbid officers of the Government from eliciting statements, out of the presence of counsel, from persons under indictment, and then to use those statements to convict them of charges other than the ones for which they were previously indicted. *United States v. Missler,* 414 F.2d 1293, 1303 (4th Cir. 1969). Such evidence elicited out of the presence of counsel does not violate defendants' Sixth Amendment right. *Id.* at 1302.

■ Similarly, this Court concludes that defendants' Sixth Amendment rights have not been violated by the electronic surveillance continued after their state arrests.

### C.

■ The defendants claim that the overall conduct of the law enforcement officers was so outrageous that evidence obtained thereby should be suppressed under the Court's general supervisory powers.

As the Court has found the conduct in question to be constitutional and based upon the reasons therein, the Court does not find the conduct to be so outrageous as to warrant the suppression of the evidence.

Accordingly, defendants' motions to suppress must be denied.

### III.

Defendants have also moved for severance pursuant to Rule 14 of the Fed.R. Crim.P.

Preliminarily, there is no question that the defendants are properly joined for trial under Fed.R.Crim.P. 8(b). They are alleged to have participated in the same act or transaction or a common scheme. *See*

*United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

Defendants have raised the following arguments in support of their motions for severance:

(a) Evidence damaging to their respective codefendants is greater in quantity and quality and hence might enure to their detriment.

(b) Each defendant would be foreclosed from calling a defendant to testify on his behalf.

(c) The possibility of "inconsistent" defenses exists.

(d) Crimes unrelated to the instant case were discussed in certain tape recorded conversations and might prove prejudicial.

(e) There exists no evidence of a formal conspiracy and no evidence that these defendants constituted an "enterprise".

(f) If any defendant were to testify, that defendant could comment on his codefendants' failure to testify and thereby prejudice those who remained silent.

A severance under Rule 14 should be granted only if a joint trial would sacrifice a defendant's right to a fundamentally fair trial. *United States v. Shuford*, 454 F.2d 772, 776 (4th Cir. 1971).

In *Shuford*, where the proffered content of co-defendant's testimony was highly relevant in the resolution of the issue of guilt or innocence and where a co-defendant had indicated quite clearly to the trial judge that he would testify if granted the severance, the Court of Appeals found the denial of defendant's motion for severance to be reversible error.

Unlike *Shuford*, the defendants in the instant case have merely alleged the desire to call a co-defendant to offer exculpatory evidence and note the possibility of inconsistent defenses. They have not shown any prejudicial effect of a joint trial which cannot be remedied by proper instructions. *United States v. Becker*, 569 F.2d 951, 964 (5th Cir.), *cert. denied*, 439 U.S. 865, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978).

The Court, thus, concludes that the consideration of judicial economy outweighs the possible prejudice to defendants and denies their motions for severance without prejudice to the right of defendants to renew the motion at trial.

Accordingly, it is this 1st day of May, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendants' motions to suppress be, and the same hereby are, DENIED;

2. That the defendants' motions for severance be, and the same hereby are, DENIED WITHOUT PREJUDICE.